UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN RECREATION PRODUCTS, LLC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:13CV421 CDP |
| TENNIER INDUSTRIES, INC., | ) ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

American Recreation Products, LLC, (ARP) brings this suit against Tennier Industries, Inc., seeking a declaration that ARP does not infringe a patent held by Tennier. Tennier challenges this court's personal jurisdiction over it. As set forth in more detail later, I agree that there is no general jurisdiction over Tennier in Missouri and that Tennier's enforcement actions in Missouri, including cease-and-desist letters, do not provide specific jurisdiction for this patent declaratory judgment action.

Shortly after this case was filed, Tennier filed its own patent infringement suit against ARP in Tennessee, where ARP contested personal jurisdiction. While the parties were litigating the jurisdictional issues, they engaged in some settlement negotiations. ARP has filed a motion to enforce settlement in this case, contending that they actually settled both cases and that Tennier breached the settlement

agreement by dismissing the Tennessee suit without prejudice.  Even though I lack personal jurisdiction over Tennier for the declaratory judgment action, there is a theoretical possibility that I might have personal jurisdiction to enforce a settlement agreement.  But because I conclude there was no settlement reached, I will deny the motion to enforce and will dismiss the case without prejudice for lack of personal jurisdiction.

**Background**

Tennier Industries, Inc. is the assignee of U.S. Patent No. 5,533,216, which encompasses the design of a modular sleeping bag.  American Recreation Products, LLC (ARP) produces a modular sleeping bag known as the Slumberjack MSS Complete Modular Sleep System.   The accused product is actually manufactured for ARP by a third company, American Discovery Textile Manufacturing, LLC, and ARP buys American Discovery's entire output of this sleeping bag.  On February 19, 2013, Tennier sent cease-and-desist letters to ARP and to its supplier American Discovery, both in Missouri, in which Tennier stated its belief that the accused product infringed upon its patent, demanded information related to the sale of the accused product, and asserted its willingness to discuss licensure of the '216 Patent.

Tennier is a New York Corporation with principal places of business in Tennessee and Florida.  Tennier primarily sells its products to the United States

military and ships those products to Pennsylvania and California. The only business that Tennier conducts in Missouri is the purchase of labels, which amounts to less than one percent of Tennier's purchases in a given year. Tennier is not licensed to do business in Missouri, does not advertise or sell its products in Missouri, and its agents do not attend trade shows in Missouri.

In addition to the February 19, 2013, cease-and-desist letters, Tennier had previously sent two other infringement letters related to the '216 patent. In 2007, Tennier issued a cease-and-desist letter regarding sales of ARP's Slumberjack VariCom product line. After ARP responded that the modular sleeping bag's design could not infringe the '216 Patent because its components were "free floating," Tennier took no further action related to the VariCom line. In 2010, Tennier sent a letter to ARP's subsidiary, Kelty, referencing a United States military solicitation for a sleep system. Tennier asserted its belief that any product manufactured in compliance with that solicitation would infringe upon its patents. The letter offered to license its modular sleep system patents to Kelty and stated that Tennier would pursue all available remedies if Kelty's products infringed upon the patent.

## Personal Jurisdiction

Because jurisdictional issues are "intimately involved with the substance of the patent laws," Federal Circuit law governs this issue. *Avocent Huntsville Corp.*

*v. Aten Intern. Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008). As plaintiff, ARP bears the burden of establishing personal jurisdiction. *See id.* at 1330. Because the parties have not yet conducted discovery, ARP need only make a prima facie showing that Tennier is subject to personal jurisdiction; thus, the pleadings and affidavits are construed in the light most favorable to ARP. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). Factual disputes are decided in favor of the plaintiff when determining whether a prima facie case for personal jurisdiction exists. *Id.*

The Federal Rules of Civil Procedure allow a party to file a motion to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). In order for a Court to exercise jurisdiction over an out-of-state defendant, two requirements must be met: 1) jurisdiction must be allowed by the Missouri long-arm statute; and 2) the reach of the long-arm statute must comport with due process. *Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1343–44 (Fed. Cir. 2006). Missouri's long-arm statute authorizes personal jurisdiction over defendants who, inter alia, transact business or make a contract within the state. R.S. Mo. § 506.500.1. The two requirements essentially collapse into the latter, as Missouri interprets its long-arm statute in accordance with the limits permitted under the due process clause. *See Enterprise Rent-A-Car Co. v. U-Haul Int'l Inc.*, 327 F. Supp. 2d 1032, 1036 (E.D. Mo. 2004); *see also State ex rel. K-Mart Corp. v. Holliger*,

986 S.W.2d 165, 168 (Mo. banc 1999).  In order to subject a defendant to a court's personal jurisdiction, due process requires that it have certain minimum contacts with the state, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  What minimum contacts are required depends on whether personal jurisdiction is general or specific.

*General Jurisdiction*

General jurisdiction arises when a defendant maintains contacts with the forum state that are "so constant and pervasive 'as to render it essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (alteration omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *see also Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012) (describing the necessary contacts as "continuous and systematic") (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)).

There is no evidence before me to suggest that Tennier's contacts with Missouri are so continuous and systematic that it should be considered at home in Missouri.  It is undisputed that Tennier is a New York corporation with principal places of business in Tennessee and Florida.  Tennier is not licensed to do business

in Missouri, does not advertise or sell its products in Missouri, and its agents do not attend trade shows in Missouri.

ARP argues that Tennier's purchase of labels from a Missouri company establishes sufficient contacts for personal jurisdiction to attach. However, purchases alone cannot establish general jurisdiction. *See Helicopteros*, 466 U.S. at 418 ("[M]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."); *see also Goodyear*, 131 S. Ct. at 2856–57 (holding sporadic sales through intermediaries insufficient for general jurisdiction). Moreover, Tennier's label purchases amount to less than one percent of its purchases. To find that these meager transactions expose Tennier to general jurisdiction in Missouri would violate Tennier's right to due process. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1015–18 (Fed. Cir. 2009) (no general jurisdiction in state where sales were one percent of revenue).

*Specific Jurisdiction*

To determine whether due process supports asserting specific jurisdiction, the court and must determine three things: (1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the plaintiff's claims arise from or relate to those activities, and (3) whether the assertion of personal

jurisdiction under the circumstances is reasonable and fair. *Breckenridge Pharm., Inc. v. Metabolite Labs, Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (requiring jurisdiction to comport with "fair play and substantial justice"). The party opposing jurisdiction bears the burden of proof as to the last inquiry, and must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" under the five-factor test set forth by the Supreme Court in *Burger King*. *Breckenridge*, 444 F.3d at 1363 (quoting *Burger King*). Those five factors are: the burden on the defendant, the interests of the forum state in adjudicating the dispute, the plaintiff's interest in obtaining effective and convenient relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 476–77.

    A patent holder's sending cease-and-desist letters to an alleged infringer in a state does not, without more, cause the patentee to be subject to personal jurisdiction in that state. *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998). Although cease-and-desist letters alone are could meet the first two requirements of minimum contacts related to the dispute, they do not meet the third requirement. "Principles of fair play and substantial

justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Id.* at 1360–61. Inclusion of an offer for a license in a cease and desist letter does not change this result. *Id.* at 1361. As the cases explain, jurisdiction will only be appropriate if the patentee takes additional enforcement or other actions in the forum. *See also Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 790 (Fed. Cir. 2011); *Avocent Huntsville Corp. v. Aten Intern. Co. Ltd.*, 552 F.3d 1324, 1333–34 (Fed. Cir. 2008); *Silent Drive*, 326 F.3d at 1202.

ARP contends that Tennier's conduct here is more than simply sending the cease-and-desist letter that prompted this lawsuit. It points out that Tennier sent multiple letters over multiple years. It argues that Tennier's a cease-and-desist letter to ARP's manufacturer (American Discovery Textile Manufacturing, LLC) was an attempt to interfere with its business and, therefore, represents the type of "extra-judicial enforcement" that has been used to subject a non-resident defendant to specific personal jurisdiction.

ARP believes the facts of this case are analogous to those in *JHRG LLC v. StormWatch, Inc.*, No. 1:09CV919, 2011 WL 3111971 (M.D.N.C. July 26, 2011). In that case, the defendant sent a cease-and-desist letter to JHRG, stating that its incorporation of decorative fabric panels into its hurricane shutters infringed upon the defendant's patents. *Id.* at *11. The defendant also contacted Tri-Vantage, the

manufacturer of the fabric that JHRG used, alleging that it had a patent on hurricane shutters made with Tri-Vantage's product and threatening to sue Tri-Vantage if it continued to supply JHRG. *Id.* at *4. The court noted that the defendant's letter to Tri-Vantage only referenced that party's role as a supplier of fabric "for use in the infringing product" and did not claim that Tri-Vantage's product was itself infringing. *Id.* at *13. The court held that it was reasonable to assert specific jurisdiction over the defendant because it had attempted to interfere with the supply of components of JHRG's product. *Id.* at *11.

The facts in this case differ from those of *JHRG*. There, the defendant contacted a party not accused of patent infringement in an attempt to cut off the supply of components to the plaintiff. But here, Tennier sent its letter to the company that actually manufactured the accused product, which is purchased entirely by ARP. Thus, Tennier's letter was not sent to an innocent third party in an attempt to harm a business rival; it was a permissible cease-and-desist letter sent to an accused infringer.

The Federal Circuit has made it clear that the public policy interests asserted in *Red Wing* extends down the supply chain: "a patent owner may, without more, send cease and desist letters to a suspected infringer, *or its customers*, without being subjected to personal jurisdiction in the suspected infringer's home state." *Avocent*, 552 F.3d at 1340 (emphasis in original) (quoting *Breckenridge*, 444 F.3d

at 1362). I see no reason why those public policy interests would not also protect a patent owner that sends notice to a supplying manufacturer who was suspected of infringing. Under these circumstances, it would be unreasonable and unfair to Tennier to subject it to personal jurisdiction in Missouri.

The remaining cases that ARP cites are distinguishable on the grounds that the defendant in each took actions beyond sending infringement notices. For example, in *Campbell Pet Co. v. Miale*, the court asserted specific jurisdiction over a defendant who not only sent cease-and-desist letters but also attempted to have the plaintiff's allegedly infringing products removed from a convention and told potential customers there that the plaintiff's products were infringing. 542 F.3d 879, 886 (Fed. Cir. 2008). Because the defendant "took steps to interfere with the plaintiff's business by enlisting a third party to take action against the plaintiff," it was reasonable to hale the defendant into court. *Id.* at 887. Similarly, in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, the court subjected a defendant to personal jurisdiction where the defendant sent a notice of infringement to *eBay* and caused the auction site suspend the plaintiff's auction of allegedly infringing products. 514 F.3d 1063, 1082 (10th Cir. 2008). Finally, in *Sudden Valley Supply LLC v. Neal P. Zeigmann*, the defendant sent an infringement letter and attended a convention in the forum state where he discussed his patent claims with the convention attendees. No. 4:13CV53 JCH, 2013 WL 2099440, at *4 (E.D. Mo.

May 14, 2013). Tennier's conduct related to the declaratory judgment action is limited to the sending of cease-and-desist letters and invitations to discuss a license. Under those circumstances, it would be unfair to subject it to Missouri's jurisdiction. *See Avocent*, 552 F.3d at 1334.

## Motion to Enforce Settlement

In its motion to enforce settlement, ARP argues that Tennier is subject to personal jurisdiction in Missouri for purposes of enforcing a settlement agreement. In *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 698 (8th Cir. 1995), the Eighth Circuit held that personal jurisdiction in Minnesota was proper over a Japanese company that had negotiated a settlement of a patent dispute with a Minnesota company. In that case the parties had held numerous meetings and discussions, including some in Minnesota. After both parties signed the contract, and after significant follow-up activities, including meetings in Minnesota, a dispute arose and the Minnesota company sued the Japanese company for breaching the contract.

Tennier argues that without personal jurisdiction to resolve the patent dispute, this court cannot enforce a settlement of that dispute. It also argues that no settlement agreement exists, because: (1) the parties did not intend for the settlement to be effective until it was reduced to writing and signed and (2) the parties did not agree on essential settlement terms, as evidenced by the phrasing in

their emails and Tennier's subsequent rejection of the terms of the draft settlement agreement.

"Under Missouri law, a motion to enforce settlement is a collateral action which imposes on the party seeking specific performance 'the burden of proving, by clear, convincing and satisfactory evidence, his claim for relief.'" *Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251–52 (8th Cir. 1996) (quoting *Randall v. Harmon*, 761 S.W.2d 278, 278 (Mo. Ct. App. 1988) (citation omitted)). Before a plaintiff can establish a breach of contract, it must establish that a contract existed. *Gateway Exteriors, Inc. v. Suntide Homes, Inc.*, 882 S.W.2d 275, 279 (Mo. Ct. App. 1994). Missouri determines the existence of a contract according to the "mirror-image rule," which demands a definite offer and a "mirror-image" acceptance. *Brown v. Donham*, 900 S.W.2d 630, 633 (Mo. banc 1995). "An offer is made when the offer leads the offeree to reasonably believe that an offer has been made." *Brown Mach., Div. of John Brown, Inc. v. Hercules, Inc.*, 770 S.W.2d 416, 419 (Mo. Ct. App. 1989). An offer is defined under the Restatement as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Volker Court, LLC v. Santa Fe Apartments, LLC*, 130 S.W.3d 607, 611 (Mo. Ct. App. 2004) (citation omitted) (quoting Restatement (Second) of Contracts, § 24 (1981)). "A 'manifestation of willingness to enter into a bargain,' however, 'is not

an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.'" *Id.* (quoting Restatement (Second) of Contracts § 26). Thus, the parties' negotiations, proposals, or preliminary steps do not constitute a contract. *Kalivas v. Hauck*, 290 S.W.2d 94, 101 (Mo. 1956). The existence and terms of a contract depend upon the objective manifestations of the parties, and not upon their subjective intent. *Volker Court*, 130 S.W.3d at 611; *see also McDaniel v. Park Place Care Ctr., Inc.*, 918 S.W.2d 820, 827 (Mo. Ct. App. 1996).

I have carefully reviewed the evidence provided by the parties regarding their settlement discussions. Both sides have provided affidavits and copies of emails between counsel. The evidence shows that they had initial discussions about settling the cases, and had agreed on a framework for a settlement, but that the negotiations broke down when they began exchanging documents. After examining all the evidence I am not "firmly convinced" from the "objective manifestations" of the parties that they had reached a final, binding, oral agreement that can be enforced. Instead, their oral framework required written terms that could be discussed with their clients. Their inability to ultimately agree on the written terms shows that, in fact, the oral framework was not a binding settlement agreement, because there were material issues that were never resolved. Additionally, the parties did not inform either court that they had actually reached

a settlement, and even the draft notice that was proposed (but never filed) for the Tennessee court stated merely that they were working on a settlement.  *Cf. Visiting Nurse Ass'n, St. Louis v. VNAHealthcare, Inc.*, 347 F.3d 1052, 1054 (8th Cir. 2003) (interpreting parties' cancellation of pending hearing as strong evidence that a binding settlement agreement had been formed).

ARP has not met its heavy burden of establishing the existence of a settlement.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to enforce settlement [# 26] is denied.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss or transfer [# 13] is granted and the case will be dismissed without prejudice on this day in a separate Order of Dismissal.

                                                     _____
                                                     CATHERINE D. PERRY
                                                     UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2014.